IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
NORMA J. LANIER,                      )
                                      )
              Plaintiff,              )
                                      )
         v.                           )    1:07CV00430
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
              Defendant.              )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final partially favorable decision as to her claims for Social Security disability insurance benefits, a period of disability, and supplemental security benefits. The Commissioner's decision became final on May 2, 2007, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge (ALJ). Plaintiff has filed a motion for summary judgment, Defendant has filed a motion for judgment on the pleadings, and the administrative record has been certified to the Court for review. Prior to the instant claim, Plaintiff filed an application for disability insurance benefits which was denied at the initial level on August 23, 1995, and not appealed. (See Tr. at 80.)

### The Plaintiff

Plaintiff was 42 years old at the time of her hearing in front of the ALJ. The ALJ found that Plaintiff has a high school

education and that she had no past relevant work. According to the ALJ, Plaintiff alleged disability as of March 31, 1992.

## **Plaintiff's Issues**

Although Plaintiff presents her complaint as a single issue, she actually argues that the ALJ erred both in assessing the severity of her mental impairments and in the weighing of medical opinions.

## **Discussion**

In reaching a decision on Plaintiff's claim, the ALJ followed the five-step analysis set out in the Commissioner's regulations. See 20 C.F.R. §§ 404.1520 and 416.920. Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Id. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. Id.

The ALJ first found that Plaintiff had not engaged in substantial gainful activity since the date of her alleged onset of disability. He next found that Plaintiff suffered from the severe impairments of shortened Achilles tendons with associated gait

-2-

problems, and of cervical disc disease. The ALJ determined that, although Plaintiff alleged "nervous" as a disabling impairment on her disability report, her mental health impairments caused no more than mild functional limitations. The ALJ decided that, as of September 30, 2005 (the date of her supplemental security benefits application), Plaintiff's severe impairments met the requirements of Listing 1.02A in Appendix 1, Subpart P, Regulation Number 4.

The ALJ found that, prior to September 30, 2005, Plaintiff had the residual functional capacity to perform sedentary work. Thus, based on the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations, he determined that Plaintiff could perform jobs which existed in significant numbers in the national economy. Accordingly, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act prior to June 30, 1997, her date last insured (DLI).

The scope of review by this Court of the Commissioner's decision denying benefits is limited. Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case de novo. Id. The Court may not make credibility determinations, or substitute its judgment for that of the ALJ's. Johnson v. Barnhart, 434 F.3d

650, 653 (4th Cir. 2005). "Substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (citation omitted), or evidence which "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance," Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

**Issue One**

Plaintiff generally complains that the ALJ erred with regard to his assessment of the medical opinions of record in determining whether her mental impairments were severe prior to her DLI. According to Administration practice, an impairment is "not severe" if it is only "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities." Social Security Ruling (SSR) 96-3p, 61 Fed. Reg. 34468, 34469. See also 20 C.F.R. §§ 404.1520(c) and 416.920(c). The Regulations provide that "basic work activities" affected by mental impairments would include (i) understanding, carrying out, and remembering simple instructions; (ii) use of judgment; (iii) responding appropriately to supervision, co-workers and usual work situations; and (iv) dealing with changes in a routine work setting. Id. §§ 404.1521(b)(3)-(6) and 416.921(b)(3)-(6). During the severity assessment, the adjudicator is required to make "a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms)." SSR 96-3p, 61 Fed. Reg. at 34469.

Plaintiff's records fail to show that, as a result of her mental impairments, she experienced more than a minimal effect on her ability to perform basic work activities. As recounted by the ALJ (Tr. at 18), Plaintiff and her sister told a state agency representative that she "was nervous all the time," yet had never received any mental health treatment and took no medication (Tr. at 79; see also Tr. at 55). Cf. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (the failure to seek help constitutes a reason for discounting subjective claims); Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1997) (affirming ALJ's finding of non-severity, in part, because claimant was neither undergoing regular treatment nor regularly taking medication). The physical consultative examiner found Plaintiff to be alert, cooperative, and articulate. (Tr. at 186.) Not surprisingly, two state experts found insufficient evidence upon which to base a mental impairment decision for this period. (Tr. at 152, 167.) See 20 C.F.R. §§ 404.1512(c) and 416.912(c) (a claimant must provide medical evidence that she had an impairment and how severe it was). See also Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981) (claimant bears the burden of establishing a prima facie entitlement to benefits). And a state vocational expert determined that Plaintiff's mental impairments did not appear to compromise her indicated occupational base. (Tr. at 135.)

-5-

Case 1:07-cv-00430-TDS-WWD   Document 12   Filed 11/25/08   Page 5 of 17

Nor do the disability forms support Plaintiff's allegation. On one Disability Report submitted for her 1995 application, Plaintiff said that she was disabled only by short heel chords and back trouble. (Tr. at 55.) Cf. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (finding it "significant" to the severity analysis that plaintiff failed to allege depression in her benefits application). On a second she stated, "I was out because of my legs." (Tr. at 61.) Plaintiff added that she could not work because of leg and back pain, and swelling. (Id.) In her Work Activity Report, she explained that her job ended because of feet and leg pain. (Tr. at 69.)

With regard to her 2003 application, Plaintiff again did not allege that her mental impairments limited her ability to work. (See Tr. at 100.) She stated that she "had to quit because of [her] pain." (Tr. at 101.) Plaintiff was not undergoing any mental health treatment nor was she taking any mental health medication. (See Tr. at 102-04.) In her "Remarks," she referred only to her physical problems. (Tr. at 106.)

Plaintiff reiterated that she had been nervous "all her life," but told the disability examiner that she did not think that she needed treatment. (Tr. at 108-09.) Plaintiff's appeal Disability Reports made no mention of mental health concerns (see Tr. at 110-23), and reports submitted prior to her hearing failed to show that she was engaging in mental health treatment or taking mental health medications (see Tr. at 124-25). And the 2003 physical

consultative examiner found Plaintiff to be very pleasant-appearing, and oriented times three. (Tr. at 209.)

Additionally, Plaintiff's non-mental health caregivers provide no support for a finding that her mental impairments were severe. (See, e.g., Tr. at 178, 203, 222-23, 229.) In 2005, Plaintiff told her neurologist that she had quit work in 1995 "because she would have swelling and pain to her feet all day." (Tr. at 233.) Although she complained of occasional depression, she was taking no anti-depressants and had no suicidal or homicidal ideation. (Tr. at 234.) Plaintiff's mental status examination was normal. (See Tr. at 235.) During her initial visit with a general practitioner, Plaintiff reported that her appetite and sleeping patterns were stable. (Tr. at 226.) She was not having crying spells or suicidal thoughts.

Plaintiff finally made an aborted attempt to seek treatment on March 30, 1997, some 19 months after her 1995 application was denied. (See Tr. at 188.) Even at this visit, however, there is no showing that Plaintiff's impairments were regulatorily "severe." The caregiver found that Plaintiff had "clinical" levels of anxiety and also depression, but the depression not "major," and she exhibited no psychotic process. (Id.) Plaintiff received no mental health prescriptions. This medical record does not indicate that Plaintiff's ability to engage in basic work activities would be affected.

Plaintiff did not again seek treatment until November 5, 1997, 7 months after her initial visit, and 4 months after her DLI. (See

Tr. at 189-92.) Although her symptoms at this visit were arguably severe (e.g., decreased concentration and memory) (Tr. at 192), as discussed by the ALJ (Tr. at 18), Plaintiff's symptoms improved dramatically within just a few months (see Tr. at 195). Cf. 42 U.S.C. § 423(d)(1)(A) (the durational requirement is a continuous period of impairment of not less than 12 months). By January 26, 1998, Plaintiff told a caregiver that her "mood is good and that she rarely feels sad." (Tr. at 195.)

At her June 9th visit, Plaintiff had stopped, and then re-started, her antidepressant, yet had "done fairly well," with her anxiety, depression and obsessive symptoms, and her sleep, all better. (Tr. at 199.) By January 1999, Plaintiff had stopped taking the anti-depressant, yet her mood was euthymic and her affect appropriate. (Tr. at 201.) There is no showing that Plaintiff engaged in further mental health treatment. Clearly, Plaintiff's records fail to establish that her mental health impairments were "severe" prior to her DLI.

**Issue Two**

Plaintiff argues, however, that the ALJ failed to weigh, or to properly weigh, the medical opinions of record in making the severity assessment. Plaintiff first complains that the ALJ failed to assign weight to the opinions of Drs. Thomas Ansbro and Brian Farah, "both of which indicate that Plaintiff's mental impairments resulted in significant limitations." Pl.s' Br. at 6. The Court disagrees.

-8-

Dr. Ansbro is the psychologist whom Plaintiff saw just 3 months prior to her DLI. It is for the ALJ and not the Court to assess the weight to be given medical opinions. The non-exclusive list of factors to be used include (1) whether the opinion is based on an examination, (2) the treatment relationship between plaintiff and the physician, (3) whether any evidence supports the opinion, (4) the consistency of the opinion with other opinions and the evidence, and (5) whether the physician is a specialist. Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005).

Although the opinions of treating physicians may be given controlling weight in making a determination of disability, they will not be given such weight if not supported by medically acceptable clinical and laboratory techniques or if they are not consistent with other substantial evidence in the record. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). A physician's opinion may be discounted based on a number of factors, such as a relatively short treatment time, lack of independent evaluation, or undue reliance simply on plaintiff's statements in forming the opinion, etc. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438 (4th Cir. 1997). Little weight may be accorded an opinion based mainly on plaintiff's subjective complaints. Johnson, 434 F.3d at 657; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). This is especially true with respect to psychological evaluations. Johnson, 434 F.3d at 657. Opinions finding medical problems may be discounted when supported by questionable tests, or are conclusory or based on scant supporting evidence. Id.

Dr. Ansbro indicated that Plaintiff suffered from clinical levels of anxiety and some depression, although not "an acute major depression." (Tr. at 188.) He found no evidence of a psychotic process, but saw "indications of idiosyncratic and fantasy-ridden thinking and also problems with flawed logic and faulty judgment at times." (Id.) Yet, Plaintiff received no prescriptions; Dr. Ansbro merely recommended "concrete interventions," such as relaxation techniques, "behavioral interventions," "skills training," and "help with social skills and socialization experiences." (Id.) See Parra, 481 F.3d at 750-51.

Moreover, Plaintiff did not seek further treatment for 7 months and then, as noted by the ALJ, "her symptoms of depression and anxiety quickly improved after treatment with antidepressant medications." (Tr. at 18.) See Hilkemeyer v. Barnhart, 380 F.3d 441, 446 (8th Cir. 2004) (affirming ALJ's severity decision where, inter alia, plaintiff's impairment was improved with treatment). Thus, there is no showing that, even if Plaintiff's symptoms in March 1997 impacted her ability to perform basic work activities, that such impediment lasted for 12 months or more. Cf. 42 U.S.C. § 423(d)(1)(A); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act). Further, any error that the ALJ may have committed in not assigning weight to Dr. Ansbro's statements is harmless, as Plaintiff has failed to show how the doctor's report supports a finding that her mental functioning impairs her ability to engage in basic work

activities, as described in the Regulations. See, e.g., Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ("'An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably had no practical effect on the outcome of the case.'" (citation omitted; alteration in original)); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected).

Dr. Farah conducted the psychiatric consultative examination in connection with Plaintiff's 1995 application. (See Tr. at 179-83.) The opinions of these consultants are subject to weighing as are all opinions offered in disability cases. 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); see also id. §§ 404.1527(d) and 416.927(d) ("[W]e will evaluate every medical opinion we receive."). Accordingly, "[t]he more a medical source presents relevant evidence to support an opinion, . . . the more weight we will give that opinion." Id.

The passage to which Plaintiff refers reads:

I see [Plaintiff] as somebody who has probably been chronically dysthymic, likely related to being raised by an alcoholic Father, and now she has a lot of avoidant traits, and this sort of generalized anxiety about life with a lot of unrealistic fears floating around in her

-11-

> head. All these things – chronic anxiety and depression, history of alcoholism in the family, and so on – probably combine to hamper her ability to get along in life, but it is encouraging that she held 1 job for 3 years.
>
> SUMMARY:
>
> She has some psychiatric symptoms that are on the threshold between sub-clinical and clinical, and I think she could benefit from Mental Health treatment. She has demonstrated that she can hold some type of employment in the past, and this is also a good prognostic indicator.

(Tr. at 183.) "[T]he mere presence of a condition is not sufficient to make a step-two showing. . . . In determining whether a severe impairment exists, the Commissioner considers the 'effect' of the impairment." Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). And Dr. Farah's observations that Plaintiff has held employment, and for an extended period, do not demonstrate that her mental impairments have a "severe" effect.

Moreover, in the section entitled "Mental Status Exam," Dr. Farah stated:

> Plaintiff did cooperate fully with the interview process, had good reality contact, no abnormal motor activity, was a little bit tense and visibly anxious, and did have a mild tremor early on in interview. Overall, she was pleasant. She does tend to exaggerate symptoms, did not tend to minimize things. I think she was overall trying to be honest. Thoughts were spontaneous. There was no thought blocking or pressured speech. No manic symptoms.

(Tr. at 181.) This passage, rather than the one quote above, would appear to be more pertinent to the severity finding, because it describes Plaintiff's current functioning, as opposed to a generalized discussion of her psychological makeup. Again, the

-12-

doctor's observations fail to support a finding that Plaintiff's impairments are severe.

Although Plaintiff is correct that the ALJ did not specifically refer to Dr. Farah's report in assigning weight, he did discuss the doctor's exam. But the ALJ explained that, "[i]n assessing the severity of the claimant's mental impairment for the period prior to the [DLI], I have given the most weight to the findings of Dr. Steve Salmony[.]" (Tr. at 18.) Thus it is clear that the ALJ (i) weighed other opinions and (ii) was most persuaded by Dr. Salmony's opinion, over the others. Accordingly, Plaintiff has failed to establish that she has been prejudiced by the ALJ's oversight. See Brock v. Chater, 84 F.3d 726, 729 (5th Cir. 1996) ("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges.").

As to a third opinion, Plaintiff contends the ALJ erred because he did not explain why Dr. Salmony's opinion was entitled to such great weight. Dr. Salmony, a non-examining expert, opined that there was insufficient evidence to find Plaintiff's mental impairments severe.[1] (Tr. at 167.) The ALJ was required by Administration policy to consider the findings of the nonexamining State agency consultant as opinion evidence, as such experts are considered "highly qualified physicians and psychologists who are

---

[1] Dr. Salmony's opinion was an affirmation of a January 2004 opinion rendered by psychologist Ben Williams, without discussion. (See Tr. at 153-66.)

-13-

also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2). But the ALJ is not bound by such opinions, and the opinion of a non-examining physician cannot serve as substantial evidence when it is contradicted by the other evidence in the record. See Martin v. Secretary of Dep't of Health, Educ. & Welfare, 492 F.2d 905, 908 (4th Cir. 1974). See also 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." ).

In support of his opinion, Dr. Salmony noted Plaintiff's lack of treatment; Dr. Farah's report; Plaintiff's evaluation upon starting treatment in November 1997; and her follow-up appointment in December 1997. The ALJ expressly stated that he afforded the most weight to Dr. Salmony's opinion because the doctor "concluded that, despite the consultative evaluation, there was insufficient evidence to establish any severe mental impairments for the period through the [DLI]." (Tr. at 18.) He added that, based on Plaintiff's testimony, "she has not sought or received mental health treatment for the past seven years." (Id.)

The record supplies substantial evidence, as discussed fully in "Issue One" above, to support the ALJ's reasoning. As cited by the Tenth Circuit Court of Appeals, "when Congress codified the severity requirement in the Regulations, it noted that a claimed 'physical or mental impairment must be of a nature and degree of

-14-

severity sufficient to justify its consideration as the *cause of failure to obtain any substantial gainful work.*'" Williamson, 350 F.3d at 1100 (quoting S. Rep. No. 1987, 83d Cong., 2d Sess., reprinted in 1954 U.S.C.A.A.N. 3710, 3730 (emphasis added)). The ALJ observed that "[t]he evidence shows that [Plaintiff] was able to work on a sustained basis despite her life long symptoms of anxiety." (Tr. at 18.) Cf. Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987) ("[E]vidence showing that a claimant has worked despite a long standing impairment may be substantial evidence that the impairment is not disabling.") (citing Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970). Plainly, Plaintiff's records are insufficient to make a contrary showing.

Finally, Plaintiff objects to the ALJ assigning less weight to the August 1995 opinion of Dr. Charles Johnson because the Listings[2] for mental impairments had since been "significantly revised." (Id.) Plaintiff argues that this is an improper basis upon which to weigh the opinion as it is not specifically provided for in the Regulations. The pertinent Regulations, however, have a "catch-all" provision that states: "[W]e will also consider any

---

[2]The "Listings," found at 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A), "is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.' [Sullivan v. Zebley, 493 U.S. 521, 530 (1990).] In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing. Id., 20 C.F.R. § 404.1526(a). ... When a person claims a disability that is not contained in the listings, or a combination of disabilities, the [Commissioner] requires that the claimant demonstrate his disability, or that the combination of his disabilities, 'medically equal' a listed impairment. 20 C.F.R. § 404.1526(a)." Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990).

-15-

factors . . . of which we are aware, which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d)(6) and 416.927(d)(6).

In this instance, the Court finds the ALJ's caution to be well-founded. In introducing its revisions, the Administration advised:

> [W]e are revising the third and fourth paragraph B functional criteria in each listing. We are adding paragraph C functional criteria to listings 12.02 (Organic Mental Disorders) and 12.04 (Affective Disorders). We are standardizing at two the number of paragraph B criteria that an impairment must satisfy to meet a listing. In §§ 404.1520a and 416.920a, we are modifying the B criteria rating scales and the requirements for documenting application of the technique at all review levels. We also are deleting certain provisions that address issues that already are covered in other regulations. We are adding a new paragraph F in the introductory text to the neurological listings that discusses the evaluation of traumatic brain injury. We also are making changes to and reorganizing the introductory text to the mental disorders listings.

"Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed. Reg. 50746, 50746 (Aug. 21, 2000). Because of the substantial changes made in the mental health listings, and especially in light of Dr. Johnson's finding that there was "Insufficient Medical Evidence" in Plaintiff's file through the consultative examination (Tr. at 139), the Court finds that the ALJ was justified in according less weight to Dr. Johnson's opinion.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment (docket no. 8) be denied, that Defendant's motion

for judgment on the pleadings (docket no. 10) be granted, and that Judgment be entered dismissing this action.

/s/ Russell A. Eliason
**United States Magistrate Judge**

November 25, 2008